MARIA CHIEPPO *vs.* SAVINO CHIEPPO ET ALS.

Third Judicial District, Bridgeport, April Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, JS.

Section 69 of the Corporation Act of 1903 provides that no corporation shall commence business until its certificate of organization has been filed. *Held* that notwithstanding this restriction upon the powers of the corporation which it acquired upon the date of the approval of its certificate of incorporation, business contracts made by the corporation in good faith before the filing of the certificate of incorporation were not mere nullities; and that if the contract was one which would otherwise be enforceable upon principles of ratification and estoppel, it might be enforced against the corporation after its certificate of organization had been filed.

One who, without authority, professes to act as agent for a corporation may be personally liable on an implied warranty of authority, if he believed in good faith that he had the authority, and in an action of deceit, if he knew or, as in the present case, should have known, that he had not such authority. But if the corporation is bound by the contract, either originally or because of its subsequent ratification or estoppel, there is no personal liability upon the part of the agent.

In the present case a private corporation borrowed money before its certificate of organization had been filed, and gave its note therefor, signed in its name and by its officers. At the time this note was made, all parties supposed it to be a valid obligation of a corporation organized to do business. About five months later the certificate of organization was filed. *Held* that upon these facts the corporation itself became liable upon the note, and therefore its officers and agents incurred no personal liability.

Argued April 16th—decided June 10th, 1914.

ACTION to recover damages for alleged false and fraudulent representations to the effect that a so-called corporation, of which the defendants claimed to be officers, had been fully organized and was competent to transact business, in reliance upon which the plaintiff was induced to loan it $1,696, brought to and tried by the Superior Court in New Haven County, *Gager, J.;* facts found and judgment rendered for the plaintiff, from which the defendant Russo appealed. *Error and new trial ordered.*

The amended complaint alleges, in substance: that the defendants, on November 2d, 1908, filed a certificate of incorporation of The S. Chieppo & Sons Company; that they thereupon engaged in the business referred to in the certificate, and falsely and fraudulently held themselves out to the plaintiff as a corporation authorized to do business; that on May 17th, 1909, the plaintiff, relying on the defendants' representations, loaned to them $1,696 for the use of such pretended corporation, and took from them a promissory note in the following form:—

"$1,696.          New Haven, Conn. May 17, 1909.

On demand after date we promise to pay to the order of Maria Chieppo sixteen hundred and ninety-six 00/100 dollars payable at 586 Grand Ave.

Value received.          The Chieppo & Sons Co.
                                   Savino Chieppo Prest.
                                   Angelo Chieppo Sec.
                                   · Paul Russo Segretay."

The complaint then averred that the defendant corporation had not on that date filed its certificate of organization, and was not then a corporation organized to do business, and that by reason of the false and fraudulent representations aforesaid the plaintiff had

been damaged in the sum of $1,696 with interest from May 17th, 1909.

The defendants Savino Chieppo, Angelo Chieppo and Nicola Chieppo defaulted, and the defendant Paul Russo alone appeared to defend the action.

The judgment-file finds the issues for the plaintiff. It is also specially found that the corporation commenced and continued to carry on its business as a corporation from the date of filing the certificate of incorporation up to and after May 17th, 1909; that a certificate of organization of the corporation was filed October 6th, 1909; that on October 8th, 1909, a notice of voluntary dissolution under the statute was filed, and thereafter the corporate existence was dissolved; that none of the defendants were guilty of fraud, other than as may be inferred from the facts surrounding the execution of the note; that at the time of the execution and delivery of the note both the plaintiff and the defendants supposed it was the valid note of the corporation organized to do business; and that it did not appear what steps, if any, had been taken, other than by bringing this suit, to enforce the note. There is no finding one way or the other as to whether the corporation was solvent prior to its dissolution, or whether its directors as statutory trustees under § 30 of the Corporation Act of 1903, concerning the voluntary dissolution of corporations, had in their hands funds sufficient to have paid the note on demand.

*Levi N. Blydenburgh* and *Benjamin Slade,* for the appellant (defendant Russo).

*Samuel A. Persky,* for the appellee (plaintiff).

BEACH, J. This is an action in the nature of an action of deceit. The deceit alleged is in falsely rep-

resenting that the corporation, in whose name the note in question was executed, was then lawfully authorized to execute the note; and the important question presented by this appeal is whether the facts found are sufficient to support a judgment against the individual defendants for the face of the note with interest.

The plaintiff's claim is that the defendants are personally liable on the note because they assumed to execute it as agents for a principal who was legally incapable of making such a contract. Then, it is said, on the authority of *Johnson* v. *Smith*, 21 Conn. 627, *Ogden* v. *Raymond*, 22 Conn. 379, and *Jacobs* v. *Williams*, 85 Conn. 215, 82 Atl. 202, that the liability does not flow from the obligation of the contract, but from the wrong. The conclusion is that therefore the defendants may be held in damages in this action for the face of the note with interest, without allegation or proof of any demand on, or refusal to pay by, the corporation, and without any allegation or proof that the corporation was not able to pay on demand.

In other words, the plaintiff assumes that § 69 of the Corporation Act of 1903 (Public Acts of 1903, Chap. 194), which provides that "no such corporation shall commence business until . . . a majority of its directors have caused to be filed a certificate of organization," etc., imposes an absolute incapacity to contract with reference to corporate business, so that any demand on the corporation would be legally futile, and that the defendants are therefore liable on the same principle as if they had assumed to contract as agents for a nonexistent corporation, or for a prospective corporation which had not yet been incorporated. *Lewis* v. *Tilton*, 64 Iowa, 220, 19 N. W. 911; *Blakely* v. *Bennecke*, 59 Mo. 192; *Kelner* v. *Baxter*, L. R. 2 C. P. 174.

We think the principle relied on by the plaintiff is inapplicable to this case because the corporation was

not only a *de facto* but a *de jure* corporation when the note was executed. Under § 65 of our Corporation Act the corporate existence begins when the certificate of incorporation is approved by the secretary of State. Section 3 provides that "every corporation shall have power . . . to sue and be sued and complain and defend in any court." Section 59, which applies only to corporations formed under the General Statutes, provides that every corporation to which it applies shall have the power, among others, to issue promissory notes. No time is specified in the Act when these powers shall accrue to the corporation, and it is therefore evident that corporations formed under the Act are vested with these powers from the date when their corporate existence begins. Section 69 is not, nor does it purport to be, a grant of the power to do business, but it is on its face a limitation on the right to exercise the powers already granted.

The next question is as to the character of the limitation so imposed by § 69: Whether the business contracts of a corporation made after the approval of its certificate of incorporation and before the filing of its certificate of organization are mere nullities. We think not. The statute does not provide that such contracts shall be void, although the legislature must have contemplated the possibility that corporations duly incorporated under the Act might actually engage in business before filing a certificate of organization, and might hold themselves out to the public as having the right to contract with reference to present business transactions. It is reasonable to infer that the legislature intentionally left the consequences of such a premature engagement in business to be determined in accordance with the well-settled rules of law governing the enforceability of contracts made in excess of the legal powers of corporations.

Whether any such contract is enforceable or not depends in each case upon balancing considerations of public policy against the equitable rights of the parties. On the one hand, it is for the interest of the public that the corporation shall not transcend the powers conferred on it by law; and on the other hand, a corporation ought not to be allowed to escape its just debts, though the creditor be at fault from failing to take notice of the legal limit of the corporate powers. In this connection it is to be observed that the disability imposed by § 69 is on its face merely a temporary one; that it is removable at the volition of the corporation by completing its organization according to law; that no subsequent consent of an official vested with discretionary powers is necessary before the corporation can begin business; and that the Corporation Act relates solely to private business corporations and does not include in its scope public service or financial corporations. In all these respects our Corporation Act differs widely from such statutes as the National Bank Act, under which *McCormick* v. *Market Nat. Bank*, 165 U. S. 538, 17 Sup. Ct. Rep. 433, and *Seeberger* v. *McCormick*, 178 Ill. 404, 53 N. E. 340, were decided.

Having in view the character of the corporations affected, and that the disability may be terminated at the will of the corporation, it is apparent that public policy does not require us to hold that all contracts made in violation of § 69 are void *ab initio*. Such a construction would deny to a private trading corporation the right to ratify a contract made in its name before the filing of its certificate of organization, although it had received and retained the consideration and had afterward completed its organization according to law.

In the present case the loan was made for the use of the corporation, and all the parties supposed that the corporation was legally authorized to execute the note.

Under such circumstances the corporation would be liable as for money had and received, even if its corporate organization had never been completed; and we see no reason why it should not be directly liable on the note after its temporary disability to execute the note has been removed. The result which we reach is that in cases where the contract would otherwise be enforceable on principles of ratification or estoppel, § 69 of the Corporation Act will not prevent a business contract, made before the certificate of organization was filed, from being enforced against the corporation after such certificate is filed.

It follows that the individual liability of an agent who makes a business contract in the name of an existing corporation not yet completely organized, is to be governed by the rules which ordinarily prevail where one contracts as agent for a named principal without sufficient authority. In such cases the agent is not liable or bound by the contract, because nobody intended that he should be so bound; but if, by reason of his lack of authority, the contract is not enforceable against the alleged principal, the party who has been induced to contract on the faith of the agent's authority has one of two remedies. If the agent honestly believed that he had an authority which he did not possess, he may be sued on an implied warranty of authority. If he knew, or (as in this case) ought to have known, that he had not the authority which he professed to have, he may be sued in the action of deceit. *Starkey* v. *Bank of England*, L. R. (1903) App. Cas. 114; *Noyes* v. *Loring*, 55 Me. 408; *Jacobs* v. *Williams*, 85 Conn. 215, 82 Atl. 202; Anson on Contracts, pp. 424–429.

But in such cases there can be no breach of warranty or actionable deceit if the principal is in fact bound by the contract. If the principal is bound, the other party has no ground of complaint against the agent. And it

Chieppo v. Chieppo.

can make no difference whether the principal is bound because the agent was authorized in advance, or because of a subsequent ratification, or because the principal is estopped to deny that the agent was in fact duly authorized. If for any reason the principal is bound by the contract, the other party, who contracted with the principal and not with the agent, has received all that the agent agreed or assumed to procure for him.

In the present case the corporation became directly liable on the note, on principles of ratification or estoppel, as soon as its certificate of organization was filed and it was legally authorized to execute such a note; and although the defendants were bound as corporators to know that they did not have authority until then to execute a note for business purposes in the name of the corporation, yet their liability to answer for the consequences in an action of deceit ended when the liability of the corporation on the note attached.

It is unnecessary to comment on the subsequent dissolution of the corporation. The statutes governing voluntary dissolution proceedings amply protect creditors, and there is no allegation or finding that the defendant directors have violated their duties as statutory trustees.

There is error and a new trial is ordered.

In this opinion the other judges concurred.